# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1797
_____

United States of America

*Plaintiff - Appellee*

v.

Benjamin Ray Nordby

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: May 11, 2026
Filed: July 15, 2026
[Unpublished]

_____

Before L.R. SMITH, BENTON, and STRAS, Circuit Judges.

_____

PER CURIAM.

Benjamin Ray Nordby pleaded guilty to possession of 50 grams or more of methamphetamine with intent to distribute. At sentencing, the district court[1] applied a two-level enhancement for possession of a dangerous weapon based on officers'

_____

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

discovery of a firearm along with a pound of marijuana during a traffic stop. *See* U.S.S.G. § 2D1.1(b)(1). On appeal, Nordby challenges the district court's application of the enhancement, arguing that his possession of the firearm was not relevant conduct for purposes of his methamphetamine offense. We affirm.

## I. *Background*

In early September 2023, Oklahoma law enforcement informed the Drug Enforcement Administration (DEA) that Nordby was a drug dealer who belonged to a prison gang; that Nordby had recently moved from Miami, Oklahoma, to Joplin, Missouri; and that Nordby regularly transported large amounts of drugs—primarily methamphetamine—from Oklahoma to Joplin.

The DEA confirmed that Nordby was living with his girlfriend in Joplin and began surveillance. In the subsequent days, Nordby traveled from Joplin, Missouri, to Wyandotte and Miami, Oklahoma. During his trips, DEA agents twice observed Nordby meeting Dakota Bricker, a fellow gang member involved in drug distribution.

On September 13, 2023, an Oklahoma Highway Patrol officer stopped Nordby for speeding. During the lawful traffic stop, a K-9 officer alerted to the presence of narcotics in the vehicle. Nordby admitted that he had marijuana. A subsequent search of the vehicle resulted in the seizure of one pound of high grade marijuana and a stolen firearm. The marijuana was in two baggies in the vehicle. The firearm was in a plastic bag behind the vehicle's center console. Officers arrested Nordby for possession with intent to distribute marijuana, possession of controlled dangerous drugs without a tax stamp, and possession of a firearm by a felon. He was released on bond on September 29, 2023.

Less than two months later, on November 6, 2023, a Joplin Police Department officer initiated a lawful traffic stop of Nordby's vehicle. A K-9 officer positively alerted to the presence of narcotics in the vehicle. Officers searched the vehicle and seized 212.1 grams of 100-percent pure methamphetamine in four baggies, a glass

pipe, and four cell phones. Nordby and his girlfriend, who was a passenger, were arrested. In a post-arrest interview, Nordby's girlfriend admitted that she knew of Nordby's illegal narcotics activities and his prison gang affiliation. Nordby identified Bricker as Nordby's drug supply source. During his post-arrest interview, Nordby admitted to possessing the methamphetamine and claimed that he was taking it to his daughter's house.

While in custody, Nordby called his daughter and instructed her "to call 'Brick' and have 'Brick' go to [Nordby's] home to retrieve the 'stuff' [Nordby] had for him." R. Doc. 33 ¶ 11. In a subsequent call, Nordby's daughter "confirmed 'Brick' had been to [Nordby's] residence." *Id.* During their calls, Nordby "discussed his September 2023 arrest in Oklahoma, specifically related to the seized firearm, and he claimed he had talked to an unidentified female who was going to 'stand on' the gun charge for him." *Id.*

Nordby was charged with possession with intent to distribute 50 grams or more of methamphetamine, and he pleaded guilty without a plea agreement. As part of his guilty plea, Nordby stipulated to a factual basis. He admitted that on November 6, 2023, the methamphetamine was found in his vehicle and that he possessed it with the intent to distribute it.

Prior to sentencing, the probation office submitted a presentence report (PSR). The PSR calculated a base offense level of 32 under U.S.S.G. § 2D1.1 based on the methamphetamine from the November 2023 traffic stop, as well as the marijuana from the September 2023 traffic stop. The PSR included, among other things,[2] a two-level enhancement for possession of a dangerous weapon. *See* U.S.S.G. § 2D1.1(b)(1). After crediting Nordby with acceptance of responsibility, the PSR calculated Nordby's total offense level as 33. That offense level combined with a

---

[2]The PSR also included a two-level enhancement for maintaining a drug house under U.S.S.G. § 2D1.1(b)(1). Nordby objected to application of that enhancement, and the government joined in that objection. The district court sustained the objection. That enhancement is not at issue in this appeal.

criminal history category of V resulted in an advisory Guidelines range of 210 to 262 months' imprisonment. Nordby objected to application of the dangerous weapon enhancement.

At sentencing, Nordby argued that the September 2023 traffic stop was a separate occurrence in a different state separated by almost two months involving marijuana, not methamphetamine. The district court overruled Nordby's objection and applied the firearm enhancement. It explained "that the two incidents are close enough in time that while there were different drugs involved . . . it was within the period of time that Oklahoma had reported that Mr. Nordby was involved in the drug distribution that ultimately led to his [offense conduct]." R. Doc. 45, at 8. The court calculated a total offense level of 31, a criminal history category of V, and an advisory Guidelines range of 168 to 210 months' imprisonment. The district court varied downward and sentenced Nordby to 144 months' imprisonment.

## II. *Discussion*

On appeal, Nordby argues that the district court erred in applying the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon based on his possession of the firearm seized during the September 2023 traffic stop. According to Nordby, the marijuana and firearm recovered from the September 2023 traffic stop are not related to his November 2023 offense for possession with intent to distribute methamphetamine.

"Pursuant to § 2D1.1(b)(1), a defendant's base offense level for a drug offense increases by two levels if 'a dangerous weapon (including a firearm) was possessed.'" *United States v. Ready*, 87 F.4th 931, 933 (8th Cir. 2023) (per curiam) (quoting U.S.S.G. § 2D1.1(b)(1)). "For § 2D1.1(b)(1) to apply, the government must prove two things—(1) the gun was possessed and (2) it was not clearly improbable that the weapon was connected to the drug offense." *United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010). "The evidence is sufficient to apply the [§ 2D1.1(b)(1)] increase where there is a temporal and spatial relationship between

the weapon, the drug trafficking activity, and the defendant." *United States v. Bandstra*, 999 F.3d 1099, 1101 (8th Cir. 2021).

"[T]he dangerous-weapon enhancement applies if the firearm is present during 'relevant conduct,' as defined by U.S.S.G. § 1B1.3(a)(2), not merely during the offense of conviction." *United States v. Savage*, 414 F.3d 964, 966 (8th Cir. 2005). Thus, the enhancement applies "if the weapon was used during acts that 'were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(2)). "[A]cts that were part of the same course of conduct or common scheme or plan as the offense of conviction may be considered relevant conduct in determining the base offense level for sentencing purposes, even if those acts were never charged at all." *United States v. Nichols*, 986 F.2d 1199, 1204 (8th Cir. 1993) (citation modified).

"'Common scheme or plan' and 'same course of conduct' are two closely related concepts." U.S.S.G. § 1B1.3, app. n.5(B). Offenses are "part of a common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Id.* § 1B1.3, app. n.5(B)(i). Offenses are "part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3, app. n.5(B)(ii). "In determining whether actions constitute relevant conduct, we consider the similarity, regularity, and temporal proximity of the charged and uncharged conduct. We have stressed that this is a factually intensive inquiry that is best left for district courts. We review for clear error a district court's relevant-conduct findings." *United States v. Hogue*, 66 F.4th 756, 765 (8th Cir. 2023) (citation modified).

We hold that the district court did not clearly err in finding that the September 2023 traffic stop resulting in the seizure of marijuana and a firearm was sufficiently connected to the charged offense of possession with intent to distribute marijuana such that it could be considered part of a single episode, spree, or ongoing series of

offenses. Nordby *did not* object to the PSR's determination that the pound of high grade marijuana seized during the September 2023 traffic stop was relevant conduct for purposes of the base offense drug-quantity calculation. R. Doc. 33 ¶ 17 (applying U.S.S.G. § 2D1.1 and listing marijuana drug quantity as one pound). Nor did Nordby contest that he was arrested for, among other things, possession with intent to distribute the marijuana. *See id.* ¶ 48. Because Nordby failed to object to these paragraphs, "the district court properly accepted those facts as true." *Bandstra*, 999 F.3d at 1101. This means that the district court only needed to find that Nordby possessed the firearm seized during the September 2023 traffic stop and that it was not clearly improbable that the weapon was connected to the offense of possession with intent to distribute marijuana. *See Anderson*, 618 F.3d at 880.

The unobjected-to factual statements in the PSR that law enforcement recovered the firearm and the pound of high grade marijuana from Nordby's vehicle during the September 2023 traffic stop satisfy the government's burden of proof under U.S.S.G. § 2D1.1. *See United States v. Armstrong*, 60 F.4th 1151, 1167 (8th Cir. 2023) ("Although the mere presence of a firearm is not enough for the enhancement to apply . . . the enhancement generally applies where a firearm is present and it is not clearly improbable that the weapon was connected with the offense, such as when a firearm was readily accessible during a defendant's drug dealing activities." (citation modified)); *United States v. Jones*, 195 F.3d 379, 384 (8th Cir. 1999) ("It is enough if the gun is found in the same location where drugs or drug paraphernalia were stored . . . ." (citation modified)).

Even if Nordby had objected to the inclusion of the pound of marijuana as relevant conduct in the drug-quantity calculation, we would nonetheless hold that the district court did not clearly err in finding that his possession of the marijuana and firearm during the 2023 traffic stop constituted relevant conduct to the charged offense. First, the offenses were similar and evidenced Nordby's repeated pattern of transporting drugs. *See Hogue*, 66 F.4th at 765. The unobjected-to facts in the PSR show that Nordby regularly transported large drug amounts from Oklahoma to Joplin, Missouri. Both the September 2023 traffic stop and the November 2023

traffic stop occurred along this path. And Nordby's girlfriend confirmed that Bricker was Nordby's drug supply source. Although the traffic stops resulted in the seizure of different types of drugs, "[w]ith respect to offenses involving contraband (including controlled substances), the defendant is accountable under subsection (a)(1)(A) for all quantities of contraband with which he was directly involved." U.S.S.G. § 1B1.3, app. n.3(D); *see also Nichols*, 986 F.2d at 1204–06 (holding relevant conduct applied for marijuana, which was part of a dismissed count, where defendant only pleaded to conspiring to distribute methamphetamine and cocaine); *United States v. Waldrip*, 805 F. App'x 442, 443–44 (8th Cir. 2020) (unpublished per curiam) (holding relevant conduct for methamphetamine applied even though defendant pleaded guilty to marijuana conspiracy).

Second, the two traffic stops occurred within close temporal proximity. *See Hogue*, 66 F.4th at 765. The unobjected-to facts show that the two traffic stops occurred less than two months apart, during part of which Nordby was in custody. We have previously found substantially greater offense/conduct time spreads as satisfying the temporal proximity factor of § 1B1.3. *See, e.g.*, *United States v. Soto*, 62 F.4th 430, 435 (8th Cir. 2023) ("The nearly four-year time lag between the February 2017 offense of conviction and the December 2020 conduct is lengthy but not beyond our prior relevant conduct decisions.").

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____